# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES LACY-THOMPSON, | : | |
| Petitioner | : | CIVIL NO. 3:09-CV-1320 |
| v. | : | (JUDGE NEALON) |
| JERRY C. MARTINEZ, Warden, | : | |
| Respondent | : | |

FILED
SCRANTON
DEC 1 4 2009
PER _____ /s/ _____
DEPUTY CLERK

## MEMORANDUM AND ORDER

On July 10, 2009, Petitioner Charles Lacy-Thompson, an inmate presently confined in the Allenwood Low Security Correctional Institution, White Deer, Pennsylvania, filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Petitioner alleged that he is entitled to twelve (12) months of pre-release placement and that the policy of the Bureau of Prisons ("BOP") as expressed in an April 14, 2008 memorandum, which requires the Warden to obtain written consent from the Regional Director before placing an inmate in a residential re-entry center ("RRC") or community corrections center ("CCC") for more than six (6) months, violates

1

the Second Chance Act[1], as interpreted in Strong v. Schultz, 599 F. Supp. 2d 556, 562-63 (D.N.J. 2009) (finding that the policies elaborated in the April 14, 2008 memorandum were in violation of the Second Chance Act's amendments to 18 U.S.C § 3624(c) because they impermissibly constrain the staff's discretion). Id. A response to the petition and a traverse were filed. (Docs. 9, 10). Then, on October 2, 2009, Magistrate Judge Thomas M. Blewitt issued a Report recommending that the petition be dismissed without prejudice for Petitioner's failure to exhaust administrative remedies. (Doc. 12). Petitioner filed objections on October 16 and 26, 2009, (Docs. 13, 14); a brief in opposition to the objections was docketed on October 27, 2009, (Doc. 15); and Petitioner's reply was received on November 5, 2009, (Doc. 16). The matter is ripe for disposition and for the reasons set forth below, the Report and Recommendation will be adopted.

---

1. The Second Chance Act modified the pre-release custody placement statute by: (1) doubling the pre-release placement period from six to twelve months, (2) requiring the BOP to make CCC placement decisions on an individual basis, and (3) requiring the BOP to ensure that, consistent with the factors in 18 U.S.C. § 3621(b), the duration of the placement period gives the inmate the greatest likelihood of successful community reintegration. See 18 U.S.C. § 3624(c).

## Background

Petitioner's expected release date is November 10, 2010. (Doc. 15). The habeas corpus petition stated that "Respondent has advised Petitioner that his pre-release custody placement date is June 4, 2010 based upon current policies and the memorandum of April 14, 2008."[2] (Doc. 1, p. 3). Petitioner challenged the validity of this memorandum and claimed that the BOP, in reliance thereon, did not give any consideration to the Second Chance Act in setting this date. Id. Petitioner argued that if "Respondent were to follow the change of the Second Chance Act as ordered by the court in Strong, [his] pre-release custody placement date should be November 30, 2009." Id. Wherefore, the habeas petition sought an order directing

---

2. The BOP memorandum provides in relevant part:
   Regional Director Approval Required for Pre-Release RRC Placement Beyond Six Months – While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.
(Doc. 1, Ex. A, p. 4, subsection III(D)).

Respondent to immediately consider Petitioner for placement in an RRC for the duration of his sentence. Id. at p. 6.

**Standard of Review**

When objections to a Report and Recommendation have been filed under 28 U.S.C. § 636(b)(1)(C), the district court must make a de novo review of those portions of the report to which specific objections are made. Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989); Goney v. Clark, 749 F.2d 5, 6-7 (3d Cir. 1984) ("providing a complete de novo determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process"); Mutombo v. Carl, 2003 U.S. Dist. LEXIS 27124 (M.D. Pa. 2003) (Kane, J.). The district court may accept, reject, or modify, in whole or in part, the findings and recommendations contained in the report. 28 U.S.C. § 636(b)(1)(C); Local Rule 72.3. The court may, in the exercise of sound judicial discretion, rely on the magistrate judge's proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 676 (1980); Goney, 749 F.2d at 7.

## Discussion

"Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241." Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981)). The United States Court of Appeals for the Third Circuit explained that exhaustion is required for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Id. at 761-62.

The BOP's Administrative Remedy Program is a three-tier process available to inmates who "seek formal review of an issue relating to any aspect of his/her confinement." 28 C.F.R. § 542.10(a). An inmate must generally attempt to informally resolve the issue by presenting it to staff in a BP-8 form. See 28 C.F.R. § 542.13. If the issue is not informally resolved, then the inmate may submit a request for administrative remedy (BP-9) to the Warden. See 28 C.F.R. § 542.14. An inmate who is dissatisfied with the

Warden's response may appeal to the Regional Director (BP-10), and an inmate dissatisfied with the Regional Director's decision may appeal to the General Counsel in the Central Office (BP-11). See 28 C.F.R. § 542.15(a). Appeal to the General Counsel is the final administrative step. Id. The regulations further provide that the Warden shall respond within twenty (20) calendar days; the Regional Director shall respond within thirty (30) calendar days; and the General Counsel shall respond within forty (40) calendar days. See 28 C.F.R. § 542.18. Finally, the regulation provides that if the inmate does not receive a response within the time allotted for reply, then the inmate may consider the absence of a response to be a denial at that level. Id.

In the instant habeas petition, Petitioner admitted that he had not exhausted administrative remedies, but stated he "would further be prejudiced due to a time constraint if [he] were to exhaust." (Doc. 1, p. 3). He claimed that he is similarly situated to the petitioner in Strong, 599 F. Supp. 2d 556, and that he should not be required to exhaust administrative remedies. Id.; Strong, 599 F. Supp. 2d at 560-61 (excusing exhaustion because the inmate already completed one round of exhaustion).

The Magistrate Judge concluded that Petitioner's reliance on Strong is

misplaced because he did not previously complete the administrative remedy process regarding the claims now under consideration. (Doc. 12, p. 5) (citing Malvestuto v. Martinez, 2009 U.S. Dist. LEXIS 78231, *8-9 n.2 (M.D. Pa. 2009) (Conner, J.)). After an independent review of the record, including the Declaration of Susan Albert and the attached exhibits which confirm that the prior administrative remedy requests were unrelated to the Second Chance Act, the Report will be adopted. See (Doc. 15, Ex. 1).

Further, although Petitioner has filed administrative remedy requests referring to the Second Chance Act since the habeas action was initiated, they too presented a different claim from the ones now at issue, specifically the mandate of twelve (12) months pre-release placement under the Act and the validity of the April 14, 2008 BOP memorandum. See (Doc. 12, p. 3), citing (Doc. 11, Ex. RC- Request for Administrative Remedy, Regional Administrative Remedy Appeal). In these forms, Petitioner, due to his daughter's Post Traumatic Stress Disorder,[3] asked for "additional time in the

---

3. Notably, this illness is allegedly a result of Petitioner's incarceration and not a pre-existing condition. See (Doc. 15, Ex. 1, Att. 2, Letter from Karen Newman, LCSW).

half-way house (up to 12 months in accordance with the Second Chance Act of 2007)." (Doc. 11, Ex. RC). He made no mention of the BOP policy memorandums in any of his remedies.

In Travers, an inmate was twice considered for pre-release placement in an RRC. Travers v. Fed. Bureau of Prisons, 2009 U.S. Dist. LEXIS 110901, *2 (D.N.J. 2009). "The first review resulted in a recommendation for a 90 to 120 day RRC placement"; but, the inmate requested he be reconsidered for a twelve (12) month pre-release period, pursuant to the Second Chance Act, based on the special needs of his autistic child. Id. A second review concluded with a recommendation of a 120 to 150 day placement. Id. The inmate then began the BOP administrative remedy procedure, again seeking twelve (12) months halfway house placement because of the need to assist in the care of his autistic son. Id. at *3-4. His informal request (BP-8) and request for an administrative remedy (BP-9) were denied and, while his appeal to the Regional Director (BP-10) was still pending, he submitted a habeas corpus petition. Id. at *4-8. The inmate alleged that "his placement decision was impermissibly constrained by the six-month presumption contained in the April 14, 2008, memorandum" and asked that exhaustion be

excused because it would "cause 'irreparable harm' with every day that [he] is denied earlier RRC placement." Id. The Court held that exhaustion would not be futile, nor would it subject the inmate to "irreparable injury." Id. at *11-12. Further, the Court concluded:

> In the administrative remedy request presented to the Warden, Petitioner argued solely that his personal circumstances merited a longer RRC placement pursuant to the BOP's discretion an argument directed to the BOP's exercise of its discretion. Nowhere in that first administrative remedy request did Petitioner assert that the decision had been based upon the April 14 memorandum or any other allegedly incorrect interpretation of the Second Chance Act. Thus, Petitioner has made no attempt to administratively exhaust the claim presented here, and there exists no administrative record regarding review of the claim presented here.

Id. at *12-13. The petition was dismissed without prejudice. Id.

Here, Petitioner's administrative remedy requests are similar to those in Travers. See 2009 U.S. Dist. LEXIS 110901. His previous remedies sought transfer to a facility closer to home due to his daughter's health and his more recent requests sought additional pre-release placement time under the Second Chance Act, again grounded on his child's illness. See (Docs. 11, 16). While he alleged that his daughter's needs were not properly considered, Petitioner did not challenge the staff's interpretation of the

Second Chance Act, or claim that the Act mandated twelve (12) months of pre-release placement, or question the April 14, 2008 memorandum;[4] rather, his remedy requests asked for additional time "*up to* 12 months." Id. (emphasis added). Accordingly, Petitioner has not filed any administrative remedies with regard to the instant habeas claims and his petition will be dismissed without prejudice for failure to exhaust. Unlike the inmate in Strong, Petitioner did not complete a round of administrative exhaustion and his objection (Docs. 13, 16) to the Magistrate Judge's analysis of Strong will be overruled.

Petitioner's second objection, asserting that Serrano held that an inmate need only file a BP-8 form to satisfy exhaustion, will also be rejected. (Docs. 13, 16) (citing Serrano v. Martinez, 3:09-cv-1292 (M.D. Pa. July 31, 2009) (Nealon, J.)). As explained, Petitioner has yet to file a BP-8 form with regards to the issues raised in the instant habeas petition. Moreover, the

---

4. Although not raised in the habeas petition, Petitioner also challenges a BOP policy dated November 14, 2008. As with the April memorandum, however, this claim has not been raised in an administrative remedy and will be dismissed for failure to exhaust. Thus, his arguments in the addendum to the Report & Recommendation will be denied. See (Doc. 14) (citing Krueger v. Martinez, No. 1:09-cv-1116 (M.D. Pa. Sept. 3, 2009) (Rambo, J.)).

reference regarding Serrano's failure to "at a minimum submit a BP-8 informal request" occurred when this Court, considering that he had more than fourteen (14) months to utilize the administrative remedy process, rejected Serrano's excuse for failure to exhaust due to a time constraint. Id. at (Doc. 5, pp. 5-6). Contrary to Petitioner's argument, Serrano did not establish a broad "minimum" rule and his reliance thereon is misplaced. See also Ferris v. Holt, 2009 U.S. Dist. LEXIS 93983, *7-8 (M.D. Pa. 2009) (Conner, J.) (dismissing the habeas corpus petition for failure to exhaust administrative remedies where the final appeal regarding the Second Chance Act was still pending in the Office of General Counsel).

Finally, after an independent review, it is concluded that Petitioner has failed to present any basis for excusing exhaustion. The Report & Recommendation stated that Petitioner's pre-release custody review was conducted on March 31, 2009 and, on April 24, 2009, he was approved for a 180 day RRC placement. (Doc. 12, p. 2). As previously discussed, the Third Circuit Court of Appeals has emphasized the importance of exhaustion. See Moscato, 98 F.3d at 760; see also (Doc. 12, pp. 3-5), citing Malvestuto, 2009 U.S. Dist. LEXIS 78231 (holding that the inmate "had adequate time to

exhaust his administrative remedies prior to seeking relief in federal court"); Miceli v. Martinez, 2008 U.S. Dist. LEXIS 71877 (M.D. Pa. 2008) (Rambo, J.). The instant habeas action was filed on July 10, 2009 and the first administrative remedy mentioning the Second Chance Act, although raising different claims from the ones presented here, was dated August 25, 2009. Petitioner made no attempt to utilize the administrative process, with which he was clearly familiar as evidenced by his prior unrelated remedies and acknowledgment of his failure to exhaust in the petition itself, until after Respondents asked that the habeas matter be dismissed for lack of exhaustion. See (Docs. 1, 9). Regardless, Petitioner has still failed to file an administrative remedy on the claims presented in this habeas petition; therefore, any delay that may result from requiring him to exhaust the process is a result if his own failure to promptly act and will not cause "irreparable injury." See Travers, 2009 U.S. Dist. LEXIS 110901 at *4-8.

**Conclusion**

To date, despite learning of his 180 day RRC placement period on April 24, 2009, Petitioner has not filed any administrative remedies regarding the issues raised in the instant habeas petition. His previous requests were

unrelated to the Second Chance Act or to his current claims; therefore, the Magistrate Judge properly determined that his reliance on Strong, 599 F. Supp. 2d 556, is misplaced. Petitioner's objections to the Report will be overruled and the recommendation of Magistrate Judge Blewitt to dismiss the petition without prejudice for failure to exhaust will be adopted.

_____
**United States District Judge**

Date: December 11, 2009